Keith HARRIS, Petitioner–Appellee,

v.

Christopher ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent–Appellant.

No. 03–2675.

United States Court of Appeals, Second Circuit.

June 14, 2004.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the district court's August 26, 2003 judgment is AFFIRMED.

Cynthia Kean, Assistant District Attorney (Leonard Joblove, Jane S. Meyers, Assistant District Attorneys, on the brief), for Charles J. Hynes, District Attorney, Brooklyn, New York, for Appellant.

Leon Friedman (Eleanor Jackson Piel, on the brief), New York, New York, for Appellee.

PRESENT: MINER, RAGGI, Circuit Judges, and MARRERO, District Judge.*

SUMMARY ORDER

Appellant Christopher Artuz appeals the district court's grant of a writ of habeas corpus to state prisoner Keith Harris based on a claim of ineffective assistance of trial counsel. *See Harris v. Artuz*, 288 F.Supp.2d 247 (E.D.N.Y.2003). In reviewing a district court's grant of a habeas petition, we examine the court's legal conclusions de novo and its factual findings for clear error. *See Hemstreet v. Greiner*, 367 F.3d 135, 138 (2d Cir.2004). We assume familiarity with the pleadings and the his-

tory of proceedings, including the state courts' rejections of Harris's direct appeal, *see People v. Harris*, 211 A.D.2d 685, 622 N.Y.S.2d 61 (2d Dep't 1995); *leave to appeal den'd*, 85 N.Y.2d 862, 624 N.Y.S.2d 381, 648 N.E.2d 801 (1995) (Table), and his petitions for collateral relief, *see People v. Harris*, Ind. No. 599–91 (N.Y.Sup.Ct. Mar. 24, 1994), *aff'd*, No. 94–03458 (2d Dep't May 2, 1994); *People v. Harris*, Ind. No. 599–91 (N.Y.Sup.Ct. Dec. 5, 1995), *aff'd*, No. 96–00217 (2d Dep't Feb. 23, 1996); *People v. Harris*, Ind. No. 599–91 (N.Y.Sup.Ct. Apr. 4, 1997).

### 1. *AEDPA Review*

Because Harris filed his federal habeas petition on April 24, 1997, after the enactment of AEDPA, he is not entitled to habeas relief "unless the [state] adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.'" *Hemstreet v. Greiner*, 367 F.3d at 139 (quoting 28 U.S.C. § 2254(d)(1)). For a state court's application of federal law to be unreasonable, it must be more than erroneous. The "increment beyond error ..., however, need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir.2003) (internal quotation marks omitted).

### 2. *The Clearly Established* Strickland *Standard*

The standard of review applicable to claims of constitutionally ineffective assistance of counsel was clearly established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must show both that (1) his counsel's perform-

ance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Hemstreet v. Greiner*, 367 F.3d at 139 (quoting *Strickland v. Washington*, 466 U.S. at 688, 694, 104 S.Ct. 2052). *Strickland's* test is a stern one because courts must "indulge a strong presumption" that counsel's challenged conduct "falls within the wide range of reasonable professional assistance." In short, a defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052 (internal quotation marks omitted).

### 3. *The Objective Unreasonableness of Counsel's Omission*

The challenged conduct in this case concerns an omission in defense counsel's cross-examination of eyewitness Gregory Deas who, at trial, identified Harris as the person who had shot and killed Benjamin Acevedo after first having shot Deas in the hand. Counsel failed to impeach Deas with his prior inconsistent statements, evidenced in various hospital records, that he had been stabbed in the hand rather than shot.

The conduct of witness cross-examination is generally viewed as a matter of trial strategy, and, as such, is virtually unchallengeable "unless there is no ... tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir.1998) (per curiam); *see also Strickland v. Washington*, 466 U.S. at 690–91, 104 S.Ct. 2052 (holding strategic choices made after a thorough investigation of the facts and law "virtually unchallengeable," al-

though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). Reviewing courts are particularly hesitant to second-guess counsel's cross-examination tactics, mindful that counsel must often rely on trial instinct and human insight in making on-the-spot decisions about the course of attack most likely to unnerve the witness and plant doubt in the minds of jurors. *See Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052 (cautioning against the distorting effects of hindsight in reviewing strategic decisions that proved unsuccessful). Nevertheless, we must agree with the district court that this is one of those rare cases where no objectively reasonable strategic or tactical justification for counsel's omission can be conceived.[1]

Deas's prior inconsistent statement pertained to a critical fact in his account of the charged crime, i.e., that immediately before shooting Acevedo, Harris had shot Deas. If this was not true, if Deas had not been shot by Harris, defense counsel could have labeled Deas a perjurer and seriously challenged the reliability of his testimony that Harris had shot Acevedo. In fact, by impeaching Deas, counsel would have simultaneously developed a basis for challenging the veracity of the three other eyewitnesses, all of whom were friends or relations of Deas and who had similarly testified that before Harris shot Acevedo he had shot Deas in the hand. In considering whether it was objectively unreasonable for counsel to forego the benefits of such cross-examination, we observe, as the district court did, that the omitted line of inquiry posed no collateral risk to Harris's misidentification defense. The inquiry

would not, for example, have opened the door to otherwise inadmissible damaging evidence. *Cf. Strickland v. Washington,* 466 U.S. at 673, 104 S.Ct. 2052 (Counsel's reliance on testimony from plea colloquy "prevent[ed] the State from cross-examining [defendant] on his claim and from putting on psychiatric evidence of his own."); *see also Yarborough v. Gentry,* 540 U.S. 1, ——, 124 S.Ct. 1, 5, 157 L.Ed.2d 1 (2003) (per curiam) ("These are facts that the prosecutor could have exploited to great advantage in her rebuttal."); *Bell v. Cone,* 535 U.S. 685, 700–02, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Eze v. Senkowski,* 321 F.3d at 133–34; *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir.2002); *Sacco v. Cooksey,* 214 F.3d 270, 274–75 (2d Cir.2000). Moreover, even if, as the respondent asserts, Deas might have explained the inconsistency by maintaining that he had been shot by Harris but had lied to hospital officials to avoid attracting police attention, defense counsel would still have succeeded in putting before the jury Deas's admission that he had lied about the critical events on a past occasion, and could have cross-examined Deas about the asserted motive for his lies. Further, we note that medical evidence put before the district court in support of Harris's habeas petition raises some question about whether Deas could have maintained that his hand wound was caused by a gunshot.

Respondent submits that counsel might reasonably have elected to forego impeaching Deas and the other eyewitnesses about the hand shooting because there were two other eyewitnesses who could have testified that Harris shot Acevedo. The record does not indicate what, if any, credibility issues might have pertained to these witnesses. In any event, the prosecution

---

1. Apparently, the parties were unable to secure the appearance of trial counsel at the habeas hearing before the district court; thus, the record is devoid of any explanation on his part for the challenged omission.

could have called them no matter what defense Harris pursued; thus, counsel did not ensure against their appearance by avoiding impeachment of Deas about his hand injury.

In short, because no tactical justification for counsel's omission can be conceived, we must agree with the district court that counsel's challenged conduct indicates either his unfamiliarity with the contents of the medical records—which would demonstrate an impermissible failure to investigate pertinent materials—or "a significant dereliction by the defense." *Harris v. Artuz*, 288 F.Supp.2d at 260 (quoting *Eze v. Senkowski*, 321 F.3d at 127). In either case, reasonable application of *Strickland* compels a finding of objectively unreasonable representation.

### 4. *Prejudice from the Omission*

Even where counsel's conduct is objectively unreasonable, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. Because the New York State courts made no finding on this second prong of the *Strickland* test, "our review is not circumscribed by a state court conclusion with respect to prejudice." *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003). We agree with the district court that counsel's cross-examination omission prejudiced Harris within the meaning of *Strickland* because Deas's inconsistent statements about his hand injury cast doubt on the credibility of all four testifying eyewitnesses: "any reasonable juror would [have been] forced to consider how four friends managed to testify to the same physically impossible details." *Harris v. Artuz*, 288 F.Supp.2d at 260. Because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, clearly established Supreme Court prece-

dent indicates that Harris was denied the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052.

Accordingly, the district court's August 26, 2003 order granting Harris's petition for a writ of habeas corpus is hereby AFFIRMED.