**Christian GOMEZ, Petitioner,**

v.

**William BROWN, Respondent.**

**No. 07 Civ. 9464(HB)(THK).**

United States District Court,
S.D. New York.

Aug. 20, 2009.

334

336

Christian Gomez, Beacon, NY, for Petitioner.

**OPINION AND ORDER**

Hon. HAROLD BAER, JR., District Judge.*

Christian Gomez ("Petitioner") proceeding *pro se,* brings this petition for a writ of *habeas corpus,* pursuant to 28 U.S.C. § 2254, to challenge his conviction on one count of Criminal Sale of a Controlled Substance in the First Degree (N.Y. Penal Law § 220.43(1)), and one count of Criminal Sale of a Controlled Substance in the Second Degree (N.Y. Penal Law § 220.41(1)), following a jury trial in Supreme Court, New York County. Petitioner claims that his Sixth Amendment rights were violated due to: (1) the improper admission of hearsay testimony at trial; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. After a thorough review of the petition and the trial record, Magistrate Judge Theodore H. Katz issued a Report and Recommendation ("R & R") on April 10, 2009, recommending that the Petition be denied with prejudice. Petitioner timely submitted objections to the R & R.[1] Upon this Court's careful review of all the submissions in this case, the R & R is adopted in its entirety and the petition is denied with prejudice.

## I. BACKGROUND

The facts and procedural background of this case were extensively outlined in Judge Katz's R & R, and familiarity therewith is presumed. As such, the Court will briefly summarize only the facts most pertinent to the petition.

**The Investigation and Arrest**

Petitioner's convictions arise from two sales of crack cocaine to an undercover police officer, one of which occurred on September 7, 2001 and the other on October 3, 2001. From May to October 2001, the New York City Police Department conducted a narcotics investigation in which an undercover officer ("UC 5673") and a field team frequented the general area of 1624 Amsterdam Avenue at least three times per week, in which they focused in particular on the activities at two businesses: El Dorado Restaurant ("El Dorado") and J & C Communications Multi–Service ("J & C Communications"). Trial Transcript ("Tr.") at 70–73, 76. The investigation involved several purchases of crack cocaine, including the two transactions relevant here. *Id.* at 183–212, 217–30. On September 7, 2001, UC 5673 entered El Dorado to negotiate a narcotics purchase with Elio Roche, a subject of the investigation from whom UC 5673 previously had purchased narcotics. *Id.* at 83–86, 197. When Petitioner approached UC 5673, the latter indicated that he only wanted to deal with Roche, as he had not previously seen Petitioner. Roche assured UC 5673 that "it was okay, he's cool, everything is all right." Tr. at 189. According to UC 5673, Roche also stated "[w]e are all in this together."[2] After some negotiation, Petitioner left the restaurant,

* Catherine Hartman, a Summer 2009 intern in my Chambers and a second-year law student at Columbia Law School, provided substantial assistance in the research and drafting of this opinion.

1. Judge Katz's R & R, dated April 10, 2009, is postmarked April 13, 2009 and stamped as received on April 20, 2009. Petitioner's Letter in Opposition to the R & R, dated April 27, 2009, is postmarked April 27, 2009 and stamped as received on April 29, 2009.

2. The People sought to introduce these two statements by Roche during Petitioner's trial. As discussed in further detail below, Petitioner failed to object to the introduction of the first statement (i.e., "it was okay, he's cool, everything is all right."). The second statement, however, was excluded as inadmissible hearsay. Tr. at 170–72.

then returned and delivered a bag of crack cocaine to Roche, who subsequently passed the bag on to UC 5673. *Id.* at 191. After examining the contents of the bag, UC 5673 paid Roche $1,950 for the sixty-five grams of crack cocaine. *Id.* at 191, 210–11. The contents of the bag were later tested and confirmed to contain two and one-quarter ounces and three grains of cocaine. *Id.* at 237–38.

On October 3, 2001, UC 5673 and a field team again monitored 1624 Amsterdam Avenue. *Id.* at 119–20. When UC 5673 entered El Dorado, he requested fifteen grams of crack cocaine from Petitioner and settled on a price of thirty dollars per gram. *Id.* at 225. As before, Petitioner exited the restaurant to retrieve the narcotics, but on this occasion, upon his returning to the restaurant, personally handed the bag to UC 5673. *Id.* at 228. After inspecting the contents of the bag, UC 5673 paid Petitioner $450. *Id.* at 229. Subsequent tests of the contents of the bag by a police chemist revealed that the bag contained one-half ounce and eight and one-half grains of cocaine. *Id.* at 236–37. Petitioner was arrested pursuant to a warrant on October 24, 2001. *Id.* at 137–38.

**Procedural Background**

After a trial by jury, Petitioner was convicted of Criminal Sale of a Controlled Substance in the First and Second Degrees. *Id.* at 437. Following Petitioner's conviction, the court adjudicated Petitioner a second felony offender, and sentenced him on March 19, 2003 to concurrent indeterminate terms of fifteen years to life imprisonment for the first-degree sale charge, and six years to life imprisonment for the second-degree sale charge. 3/19/03 Tr. at 12. On appeal, Petitioner argued that the trial court violated his Sixth Amendment right to confront the witnesses against him by allowing UC 5673 to testify as to Roche's out-of-court statement that "it was okay, he's cool, everything is all right." The New York State Supreme Court Appellate Division rejected Petitioner's argument and affirmed his conviction. *See People v. Gomez,* 21 A.D.3d 827, 801 N.Y.S.2d 294 (1st Dep't 2005). According to the Appellate Division, Petitioner's claim failed procedurally because the claim was not preserved for review, but even if the argument were properly before the court, there was no error because the statement was admissible as background evidence to explain the officer's conduct. *Id.* at 828, 801 N.Y.S.2d 294. The Court of Appeals denied Petitioner's request for leave to appeal. *See People v. Gomez,* 6 N.Y.3d 776, 811 N.Y.S.2d 343, 844 N.E.2d 798 (2006).

Subsequently, on February 23, 2006, Petitioner moved *pro se* to vacate the judgment of conviction, pursuant to N.Y.Crim. Proc. Law § 440.10, based on ineffective assistance of trial counsel. *See* Declaration of Ashlyn Dannelly, Esq. ("Dannelly Decl."), Exhibit ("Ex.") F. Petitioner asserted that he received ineffective assistance from his trial counsel because his counsel (1) failed to object when UC 5673 testified about co-conspirator Roche's hearsay statement that "its okay, we're all in this together," and (2) failed to question Petitioner about the truthfulness of his co-conspirator's statement. *Id.* The motion was denied on May 4, 2006. *See id.* Ex. I. On September 14, 2006, the Appellate Division denied Petitioner leave to appeal. *See id.* Ex. L. Subsequently, on February 22, 2007, Petitioner filed a *pro se* petition for a writ of error *coram nobis* in the Appellate Division, claiming that he received ineffective assistance from appellate counsel because appellate counsel failed to argue that trial counsel provided ineffective assistance. In his petition, Petitioner contended that trial counsel's performance

was ineffective because he should have moved to dismiss the first-degree sale count, arguing that the evidence was insufficient to support Petitioner's conviction. *See id.* Ex. M. The Appellate Division summarily denied *coram nobis* relief on May 24, 2007, and Petitioner sought leave to appeal the denial to the New York Court of Appeals. *See id.* Ex. O. Petitioner's request was denied on August 22, 2007. *See id.* Ex. Q.

**Petition for Writ of *Habeas Corpus***

In Petitioner's *pro se* petition for a writ of *habeas corpus,* dated October 3, 2007, Petitioner contends that: (1) Roche's statement to UC 5673 that "it was ok, it's cool, everything is alright" was hearsay and therefore deprived Petitioner of his Sixth Amendment right to confront witnesses; (2) Petitioner's trial counsel was ineffective for failing to object to admission of the hearsay statement;[3] and (3) appellate counsel was ineffective for failing to argue that the weight of the narcotics was insufficient to support Petitioner's conviction for first-degree criminal sale of a controlled substance. The matter was assigned to me and referred to Judge Katz to prepare an R & R. On April 10, 2009, Judge Katz found that the trial evidence was sufficient to permit a reasonable jury to convict Petitioner, and recommended that this Court deny the petition with prejudice. R & R at 361. Petitioner's timely objections challenged Judge Katz's conclusions as to Petitioner's third claim, and reasserted Petitioner's position that he received ineffective assistance from appellate counsel due to his counsel's failure to argue that the weight of the narcotics was insufficient to support Petitioner's first-degree conviction. Petitioner did not file objections to Judge Katz's conclusion that

Petitioner is not entitled to *habeas* relief based on his first two claims.

## II. DISCUSSION

### Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Objections to a magistrate judge's report and recommendation must be "specific" and "written," and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Whereas the court must make a *de novo* determination of the portions of the report to which timely objections are made, 28 U.S.C. § 636(b)(1)(C), with respect to the uncontested portions of a report and recommendation, "a district court need only satisfy itself that there is no clear error on the face of the record." *Reyes v. Mantello,* No. 00–Civ.–8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985)); 28 U.S.C. § 636(b)(1)(C); Fed. R.Civ.P. 72(b)(3); *Donahue v. Global Home Loans & Fin., Inc.,* No. 05–CV–8362, 2007 WL 831816, at *1 (S.D.N.Y. 2007). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Schwartz v. Metro. Prop. and Cas. Ins. Co.,* 393 F.Supp.2d 179, 180–81 (E.D.N.Y. 2005) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *see also United States v. Isiofia,* 370 F.3d 226, 232 (2d Cir.2004). Under the clear error standard, the district court "may not simply substitute its

---

3. As discussed further below, Petitioner does not specify in his petition to which of Roche's two statements this claim refers. *See* Petition at 4.

judgment for that of the deciding court," as would be permitted under a *de novo* standard. *See Grimes v. City & County of San Francisco,* 951 F.2d 236, 241 (9th Cir.1991).

■ Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a state court has reached the merits of a federal claim, *habeas* relief may not be granted unless the state court's decision was "contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §§ 2254(d)(1). A district court may grant a writ of *habeas corpus* based on the "contrary to" language of the statute if it determines that "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ Irrespective of whether the "contrary to" language is applicable, a petitioner's writ may still be granted if "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409–10, 120 S.Ct. 1495. To establish that a state court's decision was objectively unreasonable, a *habeas* court does not require that "reasonable jurists would all agree" that the state court erred; however, it does require that the trial court has committed more than a simply "erroneous" or "incorrect" application. *Henry v. Poole,* 409 F.3d 48, 68 (2d Cir.2005) (quoting *Williams,* 529 U.S. at 411, 120 S.Ct. 1495). This Circuit has consistently construed the statute such that the standard we are to apply exists somewhere between "merely erroneous and unreasonable to all reason-

able jurists." *Francis S. v. Stone,* 221 F.3d 100, 109 (2d Cir.2000); *see also Williams,* 529 U.S. at 408, 120 S.Ct. 1495.

■ The state court's determination of factual issues is "presumed to be correct" and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Hoi Man Yung v. Walker,* 468 F.3d 169, 176 (2d Cir.2006). Nonetheless, in reviewing petitions by *pro se* litigants, the court remains mindful of this Circuit's firmly established practice of liberally interpreting *pro se* submissions "to raise the strongest arguments that they suggest." *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)); *see also Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006). The underlying reasoning of this policy is that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983); *see also Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994) (recognizing that *pro se* litigants must be afforded "special solicitude").

### Confrontation Clause Claim

■ As noted above, Petitioner did not file objections to the portion of Judge Katz's R & R that addressed Petitioner's Sixth Amendment claim and ultimately recommended that this Court dismiss the claim. I review the relevant portion of the R & R under a clear error standard, *Reyes,* 2003 WL 76997, at *1; 28 U.S.C. § 636(b)(1)(C), and after careful consideration of all of the evidence, this Court finds no clear error with respect to Judge Katz's

conclusions on Petitioner's first claim.[4] *See Schwartz*, 393 F.Supp.2d at 180–81. Thus, I adopt this portion of Judge Katz's recommendation.

■ In his *habeas* petition, Petitioner contends that the admission of certain testimony by UC 5673 during the trial violated the Confrontation Clause of the Sixth Amendment. Specifically, Petitioner claims that his Sixth Amendment right to confront adversarial witnesses was infringed as a result of UC 5673's testimony that when UC 5673 expressed his concern about Petitioner's presence during a narcotics transaction, Petitioner's co-conspirator stated that "it was okay, it's cool, everything is alright." Tr. at 189. The Appellate Division determined that this claim was not preserved for review, as the statement was never objected to at trial nor challenged in an *in limine* motion. Federal *habeas* courts may not review the judgment of a state court that rests on a procedural default that is "independent of [a] federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Jimenez v. Walker*, 458 F.3d 130, 136 (2d Cir.2006). Nevertheless, there are some "exceptional cases in which [the] exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 363, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). In *Lee*, the Supreme Court created the following considerations to aid a federal court in its determination as to whether a state court has exorbitantly applied a procedural rule

(1) whether the alleged procedural violation was actually relied on in the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest.

*Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir.2003) (citing *Lee*, 534 U.S. at 381–85, 122 S.Ct. 877). Rather than creating a strict test, the Court intended these factors to serve merely as guidelines to help "evaluate the state interest in a procedural rule against the circumstances of a particular case." *Lee*, 534 U.S. at 386–87, 122 S.Ct. 877.

■ Additionally, even if a state court has relied upon an adequate and independent state procedural bar in rejecting a claim, the claim is not barred from federal *habeas* review if "the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *accord Green v. Travis*, 414 F.3d 288, 294 (2d Cir.2005). To prove cause, a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Once a petitioner proves cause, the petitioner must also establish prejudice by demonstrating that there is a "reasonable probability" that, but for the constitutional

---

4. Indeed, the Court would reach the same conclusion even if it reviewed the R & R under a *de novo* standard.

violation that is the subject of the defaulted claim, the outcome of the relevant proceeding would have been different. *See Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *McCleskey*, 499 U.S. at 494–95, 111 S.Ct. 1454. Alternatively, a defaulted claim can be heard if a petitioner can demonstrate that the failure to consider the defaulted claim would result in a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496, 106 S.Ct. 2639; *Doe v. Menefee*, 391 F.3d 147, 160–61 (2d Cir.2004) (finding "[c]redible claims of actual innocence are extremely rare.") (internal quotations omitted).

■■■ As Judge Katz correctly found, Petitioner has forfeited the possibility of federal *habeas* review of his Sixth Amendment claim because Petitioner's counsel did not object to the admissibility of the undercover's statement at trial. Under New York law, an error at trial is preserved for appellate review only when "a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y.Crim. Proc. Law § 470.05(2). This rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 647 N.E.2d 1243 (1995); *accord Whitfield v. Ricks*, No. 01 Civ. 11398(LAK), 2006 WL 3030883, at *11 (S.D.N.Y. Oct. 24, 2006) ("In order to raise an issue on appeal, New York law requires a defendant to have

preserved the claim by raising it before the trial court."). As the Appellate Division concluded, Petitioner's challenge to the admissibility of Roche's statement was unpreserved because there was no objection raised at trial. *See Gomez*, 801 N.Y.S.2d at 294.

■■■ Further, Judge Katz properly concluded that the "contemporaneous objection requirement" is a firmly established independent and adequate state procedural bar and the repercussions for failure to comply with this requirement were necessarily enforced in Petitioner's case. *See Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir.1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *See also Garvey v. Duncan*, 485 F.3d 709, 717 (2d Cir.2007); N.Y.Crim. Proc. Law § 470.05(2). Further, in light of the factors identified in *Cotto* and *Lee*, the state court did not exorbitantly apply the contemporaneous objection rule in this case.

■■■ Moreover, this Court cannot hear Petitioner's Sixth Amendment claim because Petitioner did not demonstrate both cause and prejudice or show that a failure to consider the claim will result in a fundamental miscarriage of justice. Petitioner cannot succeed in arguing that the cause of the default was his counsel's ineffective assistance in failing to object to UC 5673's testimony. For reasons addressed below, the ineffective assistance claim itself is also procedurally barred. Indeed, even if Petitioner's confrontation clause claim was properly preserved and subject to review by this Court, the claim nonetheless would fail because Petitioner has failed to show any prejudice. As the state court found, UC 5673's statement was "admissible as background evidence to explain the officer's conduct." *See People v. Gomez*, 21 A.D.3d 827, 801 N.Y.S.2d

294, 294 (2005). Further, this Court agrees with Judge Katz's recommendation that to dismiss the claim would not result in a fundamental miscarriage of justice, as the record contains overwhelming evidence of Petitioner's participation in the narcotics sales sufficient to support his conviction, and Petitioner has not presented any new evidence to show that he might actually be innocent. For the foregoing reasons, Petitioner is not entitled to federal *habeas* relief based on the admission of Roche's hearsay statement.

### Ineffective Trial Counsel Claim

■ As previously noted, Petitioner did not file objections to the portion of Judge Katz's R & R that recommends that this Court dismiss Petitioner's ineffective trial counsel claim. Thus, I also review this portion of the R & R under a clear error standard. *Reyes*, 2003 WL 76997, at *1; § 636(b)(1)(C). Finding no clear error in Judge Katz's analysis, this Court adopts the recommendation with respect to Petitioner's second claim. *See Schwartz*, 393 F.Supp.2d at 180–81.

Petitioner's *habeas* claim that his trial counsel was ineffective for failing to object to the admission of UC 5673's testimony, which Petitioner asserts contained inadmissible hearsay statements, likewise fails due to procedural default and lack of merit. There are two possible statements to which Petitioner might assign error to his counsel for failure to object first, "[w]e're all in this together;" and second, "it's ok, he's cool, everything is alright." Petitioner does not specify to which statement he claims his counsel should have objected; however, this lack of specificity is immaterial because Petitioner neglected to raise this argument on appeal as to either statement.

■ With respect to the first hearsay statement, Judge Katz found two independent reasons that prevent Petitioner's success: (1) admissibility of the statement was never challenged on appeal, and (2) the claim is meritless. There is no clear error on either finding. First, the record is clear that Petitioner failed to present this claim on appeal, but instead waited until he brought his § 440.10 motion to challenge the effectiveness of his counsel on this score. It is a well-established principle in New York that courts must deny a § 440.10 motion to vacate when an error is discernible from the trial record and the claim was not raised on appeal. *See Sweet v. Bennett*, 353 F.3d 135, 139–40 (2d Cir. 2003); *see also Williams v. Goord*, 277 F.Supp.2d 309, 318–19 (S.D.N.Y.2003). Thus, Petitioner's 440 motion was properly denied because all the facts relating to the claim of ineffective assistance of counsel appeared on the record, and yet, Petitioner failed to present his claim below.

■ Moreover, Petitioner has not demonstrated cause for his failure to raise the claim below. *See Edwards v. Fischer*, 414 F.Supp.2d 342, 365 (S.D.N.Y.2006) (denying *habeas* petition where record offered no reason for counsel's failure to raise the claim at the appropriate time). Although given the absence of cause, this Court need not address the prejudice prong; this Court nonetheless notes that Petitioner fails to demonstrate prejudice because the claim is meritless on its face. The trial court actually did preclude the relevant statement based on Petitioner's attorney's objection to admission of the statement, and thus, Petitioner has no viable claim of ineffective assistance of trial counsel.

■ Alternatively, if Petitioner intended instead to bring an ineffective assistance claim based on his attorney's failure to object to the latter hearsay statement, the claim nonetheless suffers from procedural default and must be de-

nied. Before a federal court may consider the merits of a *habeas corpus* petition, the petitioner must exhaust all available state court remedies by presenting his constitutional claims to the highest court of the state. *See* 28 U.S.C. § 2254(b). Where state law affords petitioner a right to raise a constitutional claim "by any available procedure," and the claim is not raised, it cannot be deemed exhausted. § 2254(c). "[I]t is not sufficient merely that the [petitioner] has been through the state courts." *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir.1994) (citing *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Rather, the claims must be "fairly presented" to the state courts to provide the state with an opportunity to correct any alleged constitutional violations. *Id.* Petitioner never raised this specific claim in state court and therefore did not exhaust all available state court remedies, as required for *habeas corpus* review. *See* § 2254(b); *see also Ellman*, 42 F.3d at 147.

▉▉▉ When a petitioner no longer has "remedies available" in the state courts, because he or she is procedurally barred by state law from raising such claims, the *habeas* court may deem the claims exhausted but procedurally defaulted. *See Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir.1991) (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990)). In fact, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Petitioner forfeited his opportunity to raise this claim on appeal, and because New York courts would refuse to address the unexhausted claim, to require Petitioner to return to the state court to exhaust the claim would be futile. *See*

N.Y. Court Rules § 500.10(a); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir.2001); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). For purposes of the statutory exhaustion requirement for presenting a *habeas corpus* petition to federal courts, the claim is therefore deemed exhausted, but procedurally defaulted. *See* § 2254(b); *Grey*, 933 F.2d at 120–21; *Pesina*, 913 F.2d at 54.

Once more, Petitioner is unable to overcome the procedural hurdle because he has not even argued, leave alone demonstrated, cause for the default and prejudice. As Judge Katz correctly found, even if Petitioner's claim was appropriately preserved, the second hearsay statement nevertheless was "plainly" admissible as background information. R. & R. at 356. Thus, Petitioner cannot show prejudice because his claim is with out merit. Without any new evidence suggesting that Petitioner is actually innocent, and given the strong evidence of Petitioner's guilt based on the trial record, I adopt Judge Katz's recommendation that the jury's verdict is well-founded and the Court's rejection of Petitioner's claim will not result in a miscarriage of justice. Thus, Petitioner's claim of ineffective assistance of trial counsel is barred irrespective of which specific statement formed the basis of his claim.

### Ineffective Appellate Counsel Claim

▉▉▉ Petitioner's final *habeas* claim rests on the ground that his appellate counsel provided ineffective assistance because he failed to argue that the weight of the narcotics testified to by the People's expert was insufficient to sustain a conviction for Criminal Sale of a Controlled Substance in the First Degree. As noted, Petitioner filed a specific objection to the portion of Judge Katz's R & R that addressed this issue. Having reviewed this portion of the R & R *de novo*, this Court adopts Judge Katz's recommendation with

respect to Petitioner's final claim. *See* 28 U.S.C. § 636(b)(1)(C); *Donahue*, 2007 WL 831816 at *1.[5]

Ineffective assistance of counsel claims are governed by the standard enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006). Under this standard, petitioner must show two elements to establish a violation of the Sixth Amendment right to effective assistance of counsel: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that petitioner was prejudiced by counsel's deficient performance. *See Strickland*, 466 U.S. at 686–88, 104 S.Ct. 2052; *Henry*, 409 F.3d at 62–63; *United States v. Elshaer*, No. 96–Cr.–495, 2009 WL 1974388, at *2 (S.D.N.Y. July 8, 2009). To prevail on this type of claim, both elements of the *Strickland* test must be satisfied. *Strickland*, 466 U.S. at 700, 104 S.Ct. 2052. However, "there is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

■ Under the first prong of the *Strickland* standard, Petitioner must prove that appellate counsel selected grounds for appeal unreasonably, such as by "omitt[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir.2000). To "establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful" before the state's

highest court. *Hemstreet v. Greiner*, 367 F.3d 135, 142 (2d Cir.2004) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)), *vacated on other grounds*, 378 F.3d 265 (2d Cir.2004). Lastly, when a petitioner's § 2254 petition incorporates a *Strickland* argument, the petitioner must "do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." A petitioner must also "show that [the state courts] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698–99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

■ The Court finds that the record fully supports the Appellate Division's conclusion that Petitioner received competent representation. Petitioner fails to satisfy both prongs of *Strickland* because he cannot show that his appellate counsel unreasonably failed to raise a meritorious claim, nor that he suffered any prejudice attributable to the conduct of appellate counsel. Petitioner was convicted of Criminal Sale of a Controlled Substance in the First Degree for the two and one-quarter ounces and three grains of crack cocaine sold on September 7, 2001, and Criminal Sale of a Controlled Substance in the Second Degree for the one-half ounce and eight and one-half grains of crack cocaine he sold on October 3, 2001. A defendant must sell two or more ounces of crack cocaine to satisfy a first-degree sale charge. *See* N.Y. Penal Law § 220.43(1). UC 5673's testimony established that he purchased a bag of cocaine from Petitioner on September 7, 2001, which was stipulated by the parties as weighing over two ounces. *See* Tr. at 191, 207–09, 235–38. Given UC 5673's testimony and the facts of the stipu-

**5.** Petitioner raised this claim in his writ of error *coram nobis*, and the Appellate Division summarily denied the application. The claim has been exhausted and therefore can be addressed on its merits herein.

lation, there is no question that Petitioner sold the requisite amount of narcotics to satisfy the requirements for a first-degree narcotics sale conviction. Accordingly, appellate counsel was not ineffective for failing to raise this meritless claim. *See United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

### III. CONCLUSION

Having reviewed the uncontested portions of the R & R under a clear error standard, and having reviewed *de novo* the issues raised in Petitioner's objection, the Court adopts the Report and Recommendation of Judge Katz dated April 10, 2009 in its entirety, and the petition for a writ of *habeas corpus* is DENIED with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal form this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk is directed to close this case and remove it from my docket.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

THEODORE H. KATZ, United States Magistrate Judge.

**From: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

**To: HON. HAROLD BAER, JR., UNITED STATES DISTRICT JUDGE.**

Petitioner Christian Gomez ("Petitioner" or "Gomez"), a New York state prisoner, proceeding *pro se,* seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Otisville Correctional Facility in Otisville, New York, having been convicted by a jury on March 19, 2003, of one count of Criminal Sale of a Controlled Substance in the First Degree, pursuant to New York Penal Law § 220.43(1) ("NYPL § 220.43(1)"), and one count of Criminal Sale of a Controlled Substance in the Second Degree, pursuant to New York Penal Law § 220.41(1) ("NYPL § 220.41(1)"). He was sentenced to two concurrent indeterminate prison terms of fifteen years to life and six years to life.

After unsuccessful attempts to reverse his conviction via direct appeal and collateral attack in state court, Petitioner filed a Petition for a Writ of Habeas Corpus in this Court. Petitioner advances three claims for relief: (1) the improper admission of hearsay testimony deprived Petitioner of his Sixth Amendment right to confront witnesses; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. This proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Civil Rule 72.1(d).

For the reasons that follow, the Court concludes that Petitioner is not entitled to habeas relief and recommends that this action be dismissed with prejudice.

### BACKGROUND

#### I. Facts

Petitioner's convictions stem from two sales of crack cocaine to an undercover police officer on September 7, 2001 and October 3, 2001. Between March and October 2001, a field team including New York City Police Sergeant Kenna, Detectives Mark Roman and Robert Callahan, and Undercover Officer 5673 ("UC 5673") participated in a narcotics investigation on the Upper West Side of Manhattan. The team focused on a suspected narcotics organization operating in El Dorado Restaurant ("El Dorado"), J & C Communications Multi–Service ("J & C Communications"),

and the general area between 140th and 144th Streets on Amsterdam Avenue. (*See* Transcript of Trial Proceedings ("Tr.") at 70–73, 76.) Both businesses were located at 1624 Amsterdam Avenue. (*See id.* at 71–72.) The team noted a pattern of activity where persons used phone booths inside the premises to order drugs for delivery through a "runner."[1] (*Id.* at 74–76.) In total, the field team observed approximately sixteen subjects, most of whom they videotaped. (*See id.* at 72–73.) From May to October 2001, UC 5673 frequented the general area of 1624 Amsterdam Avenue at least three times a week, to familiarize himself with the location and demonstrate to the individuals from the neighborhood that he was a member of the community. (*See id.* at 183.) UC 5673 purchased crack cocaine from 1624 Amsterdam Avenue at least two times, including on September 7, 2001 and October 3, 2001. (*See id.* at 183–212, 217–30.)

On September 7, 2001, at around 4:00 p.m., Petitioner was standing outside El Dorado, engaged in a conversation with Johnny Acevedo, a subject of the investigation from whom UC 5673 had purchased drugs in the past. (*See id.* at 83–86, 193.) UC 5673 arrived outside the restaurant at approximately 4:20 p.m. and saw Acevedo, who made a head gesture directing UC 5673 to enter the restaurant. (*See id.* at 153, 188.) As UC 5673 proceeded towards the restaurant, he observed Acevedo direct Petitioner to go inside as well. (*See id.* at 188, 200.)[2] Once inside, UC 5673 saw Elio

Roche, another subject of the investigation from whom he had previously purchased drugs. (*See id.* at 188–89.) After exchanging greetings, UC 5673 sat down on a stool next to Roche and began to ask him about purchasing narcotics. (*See id.*) Immediately after Roche and UC 5673 began to talk, Petitioner entered the restaurant, tapped UC 5673 on the back, and said "[y]o, what do you need? What do you want?" (*Id.* at 198). UC 5673, who had never seen Petitioner before, indicated that he only wanted to deal with Roche. (*See id.* at 199.) Roche assured UC 5673 that "it was okay, he's cool, everything is all right." (*Id.* at 189.) Roche and UC 5673 continued to discuss the purchase of crack cocaine as Petitioner stood less than three feet away and listened to the conversation. (*See id.* at 199.)[3]

UC 5673 told Roche that he needed sixty-five grams of crack cocaine, and they ultimately agreed on a price of thirty dollars per gram. (*See id.* at 189–90.) Roche then turned to Petitioner and began speaking to him in Spanish. (*See id.* at 190.) UC 5673 did not understand what they said, but heard Roche say "sixty-five." (*Id.*) Petitioner then left the restaurant. (*See id.* at 99–100.)

A short time later, Petitioner returned to the restaurant and approached UC 5673 and Roche, who were still inside talking. (*See id.* at 191.) Petitioner handed a plastic bag to Roche, who passed it on to UC 5673. (*See id.*) UC 5673 opened the bag and examined its contents by sight, smell,

---

**1.** Runners are "people that are assigned to go get ... drugs from one place and bring it back" to the purchaser. (*Id.* at 68.)

**2.** Petitioner testified that he went to the restaurant to buy drugs from Acevedo, not to sell drugs. (*See id.* at 318–19, 322.) He further testified that he was there from approximately 4:00 p.m. to 7:00 p.m., but did not see UC 5673. (*See id.* at 320, 325.)

**3.** The People also sought to introduce a statement made by Roche to UC 5673 stating "[w]e are all in this together." (*Id.* at 170.) The trial court precluded its admission finding it to be inadmissible hearsay. (*See id.* at 170–72.)

and touch to confirm that the substance inside was crack cocaine. (*See id.* at 208.) UC 5673 then placed a small digital scale on the counter to weigh the bag. (*See id.* at 191.) He was satisfied with the quantity of drugs he received and handed Roche $1,950 in pre-recorded "buy money." (*Id.* at 191, 210–11.) Petitioner remained "right next to" Roche and UC 5673 for the duration of the exchange. (*Id.* at 210.)

A police chemist later tested the contents of the bag and determined that it contained two and one-quarter ounces and three grains of cocaine.[4] (*See id.* at 237–38.)

On October 3, 2001, the field team was again observing activities around 1624 Amsterdam Avenue. (*See id.* at 119–20.) At approximately 3:30 p.m., UC 5673 walked towards the restaurant and saw Petitioner and Roche standing outside.[5] (*See id.* at 218–20.) UC 5673 and Roche exchanged greetings and Roche told UC 5673 to enter the restaurant. (*See id.* at 224.) UC 5673 went inside and sat down on a stool near the back of the restaurant. (*See id.* at 225.) Petitioner approached UC 5673, greeted him, and asked "[w]hat do you need today?" (*Id.*) UC 5673 responded that he wanted fifteen grams of crack cocaine. (*See id.*) After agreeing on a price of thirty dollars per gram, Petitioner told UC 5673 that he would be back in a few minutes and left the restaurant. (*See id.* at 226.)

Five to ten minutes later, Petitioner returned and handed UC 5673 a small bag. (*See id.* at 228.) UC 5673 opened the bag, examined its contents, and weighed it.

(*See id.* at 229.) After he was satisfied that the bag contained crack cocaine, UC 5673 handed Petitioner $450 in pre-recorded buy money, which Petitioner counted and placed in his pocket. (*See id.*) Upon completing the exchange with Petitioner, UC 5673 said goodbye and left the restaurant. (*Id.* at 230.)

A police chemist later tested the contents of the bag UC 5673 purchased from Petitioner and Roche and determined that it contained one-half ounce and eight and one-half grains of cocaine. (*See id.* at 236–37.)

On October 4, 2001, at approximately 1:45 p.m., Sergeant Kenna and Detective Callahan were dispatched to El Dorado in order to positively identify Petitioner. (*See id.* at 288–89.) Inside the restaurant, Callahan approached Petitioner at the counter and Kenna approached a different Hispanic male who was taller, thinner, and younger than Petitioner. (*See id.* at 290–91.) Callahan and Kenna brought Petitioner and the other man outside the restaurant. (*See id.* at 291.) UC 5673, sitting in a parked car across the street, saw Petitioner and confirmed that Petitioner was the individual from whom he had purchased crack cocaine on September 7 and October 3. (*See id.* at 239–40, 245.)

On October 24, 2001, approximately twenty detectives from the Manhattan North Narcotics Zone executed search warrants for El Dorado Restaurant and J & C Communications, as well as arrest warrants for Petitioner and several other subjects of the investigation. (*See id.* at 137–38.) Both Detective Roman and UC

---

**4.** One grain is equal to approximately 0.002083 ounces or 0.0648 grams. *See* Merriam–Webster, *Weights and Measures, available at* http://www.merriam-webster.com/mw/table/weight.htm.

**5.** Petitioner testified that he went to El Dorado on October 3, 2001 to buy drugs from Acevedo, and admitted that he spent several hours there. (*See id.* at 329, 333, 338.) He denied seeing UC 5673 at the restaurant and stated that he never sold drugs to him. (*See id.* at 325, 330.)

5673 identified Petitioner as a subject of the investigation. (*See id.* at 140, 244–45.)

At trial, UC 5673 identified Petitioner as the man who sold him crack cocaine on September 7 and October 3, 2001. (*See id.* at 192.) Detective Roman identified Petitioner as the man he had videotaped in front of El Dorado on September 7 and October 4, 2001. (*See id.* at 143.) Detective Callahan identified Petitioner as the man he had questioned at the restaurant on October 4, 2001. (*See id.* at 289.)

## II. Procedural History

On February 13, 2003, the jury convicted Petitioner of one count of Criminal Sale of a Controlled Substance in the First Degree and one count of Criminal Sale of a Controlled Substance in the Second Degree. On March 19, 2003, the court adjudicated Petitioner a second felony offender and sentenced him to concurrent indeterminate terms of fifteen years to life imprisonment for the first-degree sale charge, and six years to life imprisonment for the second-degree sale charge.

On appeal, Petitioner argued that the trial court violated his Sixth Amendment right to confront the witnesses against him by allowing UC 5673 to testify about Roche's statement that "it was okay, he's cool, everything is all right[,]" when referring to Petitioner. (*See* Petitioner's Brief to the Appellate Division, First Department ("Pet. App. Br.") at 10–14.) The New York State Supreme Court Appellate Division, First Department rejected Petitioner's argument and affirmed his conviction. *See People v. Gomez*, 21 A.D.3d 827, 801 N.Y.S.2d 294 (1st Dep't 2005). The Appellate Division found that Petitioner's claim was unpreserved for review, and, even if it were subject to the court's review, there was no error because the state-

ment was "admissible as background evidence to explain the officer's conduct." *Id.* at 828, 801 N.Y.S.2d 294 (internal citation omitted). The Appellate Division further found that the statement "was also admissible under the admission by silence exception to the hearsay rule." *Id.* The court concluded that "[t]he record supports the conclusion that [Petitioner] heard and understood the implication of the [co-conspirator's] statement that [Petitioner] was part of the drug-selling team, and [Petitioner]'s failure to contradict the statement justifies an inference of assent or acquiescence as to the truth of the statement." *Id.* (internal citation omitted). In a letter dated November 23, 2005, Petitioner's counsel sought leave to appeal to the New York Court of Appeals, asking the court to review the Confrontation Clause argument raised before the Appellate Division. (*See* Declaration of Ashlyn Dannelly, Esq. ("Dannelly Decl."), Exhibit ("Ex.") D.) The court denied the request. *See People v. Gomez*, 6 N.Y.3d 776, 811 N.Y.S.2d 343, 844 N.E.2d 798 (2006).

On February 23, 2006, Petitioner moved *pro se* to vacate the judgment of conviction, pursuant to N.Y.Crim. Proc. Law § 440.10, on the ground that he received ineffective assistance of trial counsel. (*See* Dannelly Decl. Ex. F.) Petitioner specifically argued that his trial counsel was ineffective for failing to object when UC 5673 testified about co-conspirator Roche's hearsay statement that "it's okay, we're all in this together," and for failing to question Petitioner about the truthfulness of his coconspirator's statement.[6] (*See* Dannelly Decl. Ex. F.) The People opposed the motion (*see id.* Ex. G.), and it was denied on May 4, 2006. (*See id.* Ex. I.) The Appellate Division denied Petitioner leave to appeal on September 14, 2006. (*See id.* Ex. L.)

---

6. In fact, the trial court precluded this statement from being admitted. (*See* Tr. at 171.)

On February 22, 2007, Petitioner filed a *pro se* petition for a writ of error *coram nobis* in the Appellate Division. (*See id.* Ex. M.) Petitioner argued that his appellate counsel was ineffective in failing to argue that trial counsel provided ineffective assistance by not moving to dismiss the first-degree sale count, because the evidence was insufficient to support such a charge. (*See id.*) On May 24, 2007, the Appellate Division summarily denied *coram nobis* relief. (*See id.* Ex. O.) Petitioner sought leave to appeal the *coram nobis* denial to the New York Court of Appeals, which was denied on August 22, 2007. (*See id.* Ex. Q.)

## DISCUSSION

Petitioner brings three claims which he argues entitle him to habeas relief: (1) UC 5673's description of Roche's statements to Petitioner was hearsay, and its admission into evidence deprived Petitioner of his Sixth Amendment right to confront witnesses; (2) Petitioner's trial counsel was ineffective for failing to object to the admission of UC 5673's statement; and (3) appellate counsel was ineffective because he failed to argue that the weight of the drugs testified to by the People's expert was insufficient to support his conviction for Criminal Sale of a Controlled Substance in the First Degree.

## I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a "state court has rejected the petitioner's claim on the merits, a federal court considering a habeas corpus petition ... must defer to the state court's rejection of the claim, and must deny the writ unless ... the state court's adjudication (1) 'was contrary to' or (2) 'involved an unreasonable application of' clearly established federal law 'as determined by the Supreme Court

of the United States.' " *Henry v. Poole,* 409 F.3d 48, 67 (2d Cir.2005) (citing 28 U.S.C. § 2254(d)(1)).

 A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see also Leslie v. Artuz,* 230 F.3d 25, 32 (2d Cir.2000); *Clark v. Stinson,* 214 F.3d 315, 320 (2d Cir.2000). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" limits the law governing a habeas petitioner's claims to the actual holdings of the Supreme Court existing at the time of the relevant state court decision, as opposed to the Court's dicta or the decisions of other courts. *Williams,* 529 U.S. at 413, 120 S.Ct. at 1523; *see also Leslie,* 230 F.3d at 32.

 The "unreasonable application" standard is separate from the "contrary to" standard. *See Henry,* 409 F.3d at 68. An unreasonable application of federal law means more than a simple error or an incorrect application of federal law. *See Henry,* 409 F.3d at 68 (citing *Williams,* 529 U.S. at 411, 120 S.Ct. at 1497). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. *Williams,* 529 U.S. at 413, 120 S.Ct. at 1523. An "unreasonable application" of federal law means that the trial court has committed more than a simply "erroneous" or "incorrect" application. *Henry,* 409 F.3d at 68 (quoting *Williams,* 529 U.S. at 411, 120 S.Ct. at 1495). The Second Circuit has noted that *"Williams*

also made clear that a federal habeas court may permissibly conclude that federal law has been unreasonably applied by the state court even though not all reasonable jurists would agree that the state court's application was unreasonable." *Henry,* 409 F.3d at 68. Thus, a court should inquire as to whether the state court's application was objectively unreasonable—falling somewhere between merely erroneous and unreasonable to all jurists. *See id.*

## II. Admissibility of the Purported Hearsay Testimony

### A. *Petitioner's Claim*

Petitioner asserts that UC 5673's trial testimony—that he was told by Petitioner's co-conspirator, when he expressed concern about Petitioner's presence during a drug transaction, that "it was okay, it's cool, everything is alright"—should not have been admitted at trial as it was hearsay, and its admission deprived Petitioner of his Sixth Amendment right to confront the witnesses against him. (*See* Pet. at 4; Pet. App. Br. at 10–14.)

This claim was raised on Petitioner's direct appeal. The Appellate Division concluded that the claim was unpreserved for review because the testimony was neither challenged in an *in limine* motion, nor objected to at trial. The court further concluded that if it were to address the claim on its merits, it would find the statement admissible as background evidence, as well as constituting an exception to the hearsay rule, since Petitioner failed to contradict the statement, thereby justifying an inference that he acquiesced in the truth of the statement. *See People v. Gomez,* 21 A.D.3d at 828, 801 N.Y.S.2d 294. Respondent argues, therefore, that Petitioner's claim is procedurally defaulted, and, in any case, meritless.

### B. *Procedural Default*

▆▆▆ Federal habeas review is generally foreclosed when a petitioner's claim is barred by a state procedural rule which is "independent of [a] federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991); *accord Brown v. Miller,* 451 F.3d 54, 56 (2d Cir.2006). State procedural bars are independent and adequate when such laws are "firmly established and regularly followed" by the state in question. *James v. Kentucky,* 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984); *see also Cotto v. Herbert,* 331 F.3d 217, 239 (2d Cir.2003).

▆▆▆ Ordinarily, adequate and independent grounds are sufficient to prevent federal habeas review of state criminal convictions. There are, however, some "exceptional cases in which [the] exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna,* 534 U.S. 362, 363, 122 S.Ct. 877, 878, 151 L.Ed.2d 820 (2002). The Supreme Court has suggested three factors to consider in determining if a state court has exorbitantly applied a procedural rule:

> (1) whether the alleged procedural violation was actually relied on in the trial court's decision; (2) whether state case-law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest.

*Cotto,* 331 F.3d at 240 (citing *Lee,* 534 U.S. at 381–85, 122 S.Ct. at 888–90). These factors are not intended as a rigid test;

they should merely help "evaluate the state interest in a procedural rule against the circumstances of a particular case." *Lee*, 534 U.S. at 386–87, 122 S.Ct. at 891.

Even if a state court has relied upon an adequate and independent state procedural bar in rejecting a claim, a habeas court can still review the claim if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *accord Green v. Travis*, 414 F.3d 288, 294 (2d Cir.2005).

■ To prove cause, a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Cause exists if: "(1) the factual or legal basis for a claim was not reasonably available to counsel, (2) some interference by state officials made compliance [with the procedural rule] impracticable, or (3) the procedural default is the result of ineffective assistance of counsel." *Van Stuyvesant v. Conway*, No. 03 Civ. 3856(LAK), 2007 WL 2584775, at *15 (S.D.N.Y. Sept. 7, 2007) (quoting *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994) (internal quotation marks omitted)).

Once a petitioner shows cause, the petitioner must also establish prejudice by demonstrating that there is a "reasonable probability" that, but for the constitutional violation that is the subject of the defaulted claim, the outcome of the relevant proceeding would have been different. *See Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286 (1999); *McCleskey*, 499 U.S. at 494–95, 111 S.Ct.

at 1470–71; *see also United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982) (to show prejudice, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original).

■ In the alternative, a defaulted claim can be heard if a petitioner can demonstrate that the failure to consider the defaulted claim would result in a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir.2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (internal quotation marks omitted)). Additionally, "[t]o be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence . . . ." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995). The doctrine of actual innocence applies only in "extraordinary case [s]" and "credible claims of actual innocence are extremely rare." *Doe v. Menefee*, 391 F.3d 147, 160–61 (2d Cir. 2004) (internal quotation marks and citations omitted).

The record shows that Petitioner has forfeited the possibility of federal habeas review of his Sixth Amendment claim because Petitioner's counsel did not object to the admissibility of the undercover's statement at trial. (*See* Tr. at 189.)

Under New York law, an error at trial is preserved for appellate review only when "a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y.Crim. Proc. Law § 470.05(2). This rule "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 737–38, 647 N.E.2d 1243 (1995); *accord Whitfield v. Ricks*, No. 01 Civ. 11398(LAK), 2006 WL 3030883, at *11 (S.D.N.Y.2006) ("In order to raise an issue on appeal, New York law requires a defendant to have preserved the claim by raising it before the trial court."). As noted by the Appellate Division, Petitioner's challenge to the admissibility of his co-conspirator's statement was unpreserved because there was no objection raised at trial. *See Gomez*, 21 A.D.3d at 827–28, 801 N.Y.S.2d at 294.

It is well-settled that New York's contemporaneous objection requirement is an independent and adequate state procedural bar. *See Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir.1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *Vargas v. Keane*, 86 F.3d 1273, 1280 (2d Cir.1996) (failure to object to a prosecutor's summation constituted a procedural bar to raising the claim on habeas review). Further, this requirement is firmly established and regularly followed in New York. *See* N.Y.Crim. Proc. Law § 470.05(2); *Garvey v. Duncan*, 485 F.3d 709, 717 (2d Cir.2007).

Looking to the factors identified in *Cotto* and *Lee*, there was no "exorbitant" appli-

cation of the contemporaneous objection rule in this case. The Second Circuit has held that whether the trial court "actually relied" on the procedural violation is not dispositive in evaluating the need for contemporaneous objections. *See Cotto*, 331 F.3d at 242 ("[T]he lack of contemporaneous objection would not, almost by definition, be mentioned by the trial court.").

█ Regarding the second factor, New York state law demands compliance with the contemporaneous objection rule in order to preserve issues for appellate review. *See People v. Quinones*, 250 A.D.2d 352, 352, 672 N.Y.S.2d 689, 689 (1st Dep't 1998). The New York Court of Appeals has stated that the purpose of this rule is to bring matters to the attention of the trial court "at a time and in a way that [gives the court] ... the opportunity to remedy the problem and thereby avert reversible error." *Garcia*, 188 F.3d at 78 (internal quotation marks omitted). Moreover, New York caselaw shows that compliance with the contemporaneous objection rule is demanded in this specific circumstance. *See People v. Casanova*, 62 A.D.3d 88, 92–93, 875 N.Y.S.2d 31, 34–35 (1st Dep't 2009) (alleged error in admission of testimony was unpreserved); *People v. Tavarez*, 55 A.D.3d 932, 932, 865 N.Y.S.2d 572, 572 (2d Dep't 2008) (holding that failure to object to testimony at trial renders a claim unpreserved for appellate review and procedurally defaulted under N.Y.Crim. Proc. Law § 470.05); *People v. Friel*, 53 A.D.3d 667, 667–68, 862 N.Y.S.2d 105, 107 (2d Dep't 2008) (same).

Had Petitioner's counsel objected to the statement by the undercover officer, it would have alerted the court to "any potential error while there [was] still an opportunity to address it." *Cotto*, 331 F.3d at 245. Providing the court with an opportunity to remedy a claimed error is the

precise government interest underlying the contemporaneous objection rule.

Because Petitioner's Sixth Amendment claim has been defaulted pursuant to an adequate and independent state procedural rule, this Court cannot hear it unless Petitioner can demonstrate both cause and prejudice or show that a failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565.

██ Petitioner cannot establish either cause or prejudice stemming from his procedural default. The only conceivable cause for the failure to object to UC 5673's testimony would be the ineffective assistance of trial counsel. The claim of ineffective assistance of counsel, however, is not a viable claim. In order to use ineffective assistance of counsel as cause for procedural default, the ineffective assistance claim itself must be both exhausted and meritorious. *See Edwards v. Carpenter,* 529 U.S. 446, 451–52, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (holding that ineffective assistance of counsel claims asserted as cause for procedural default must be exhausted for the purposes of habeas review); *Cephas v. Ercole,* No. 07 Civ. 6048(NRB), 2008 WL 1944837, at *4 n. 4 (S.D.N.Y. Apr. 29, 2008) ("[I]n order to constitute cause, an ineffective assistance claim itself must be exhausted.") (citing *Edwards,* 529 U.S. at 451–52, 120 S.Ct. at 1591–92). The Court is precluded from hearing Petitioner's ineffective assistance of counsel claim because it was never made on direct appeal and is thus unexhausted.

██ Petitioner also cannot show prejudice because, even if Petitioner's claim had been appropriately preserved, as noted by the Appellate Division and the 440 court, UC 5673's testimony "plainly was admissible" as background information. (Dannelly Decl. Ex. I at 5); *see also Gomez,* 21 A.D.3d at 828, 801 N.Y.S.2d at 294 ("Were we to review this claim, we would find that the statement was admissible as background evidence to explain the officer's conduct."). Moreover, even if the admission of the statement was error, it was clearly harmless in light of the overwhelming evidence of Petitioner's participation in the narcotics sales.

Finally, dismissing the claim would not result in a fundamental miscarriage of justice. The record contains overwhelming evidence of Petitioner's guilt, and Petitioner has not presented any new evidence showing that he might actually be innocent.

Accordingly, Petitioner's Sixth Amendment claim relating to the admission of UC 5673's statement should be dismissed.

### III. Ineffective Assistance of Trial Counsel

Petitioner argues that his trial counsel was ineffective for failing to object to the admission of UC 5673's testimony, which Petitioner asserts contained inadmissible hearsay statements.[7] (*See* Pet. at 4.) Petitioner does not specify to which statement he claims counsel should have objected. However, the only claim he raised in the New York courts, which is exhausted, is that counsel should have objected to the statement "it's okay. We're all in this together." (*See* Dannelly Decl. Exs. F & I.) Therefore, the Court will first address that claim.

---

**7.** Although Petitioner's § 440.10 motion argued that trial counsel was ineffective for failing to question Petitioner about the truthfulness of his co-conspirator's statement, this claim does not appear in the Petition before the Court. *Compare* Petitioner's § 440.10 Motion to Vacate Conviction and Sentence at 5, *with* Pet. at 4.

## A. *"We're all in this together."*

There are two clear obstacles to prevailing on this claim. It is barred on the basis of an independent and adequate state ground and is also meritless.

 Petitioner never challenged the performance of his trial counsel on direct appeal. Petitioner's only claim on direct appeal addressed the admissibility of UC 5673's testimony, not the actual performance of his trial counsel. (*See* Pet. App. Br. at 10–14.) Petitioner's first complaint of ineffective assistance of counsel was brought in his § 440.10 motion. (*See* Petitioner's Motion to Vacate Judgment and Sentence at 5.) The 440 court concluded "that there was an insurmountable procedural matter that would prevent the Court from vacating judgment." (Dannelly Decl. Ex. I at 5.) Because all of the facts relating to the claim of ineffective assistance of counsel appeared on the record, Petitioner had an obligation to raise his claim on direct appeal, which he failed to do. Thus, he was barred from pursuing the claim in his 440 motion. (*See id.* at 6.)[8] It is a firmly established and regularly followed rule in New York that courts must deny a § 440.10 motion to vacate when an error is discernible from the trial record and the claim was not raised on direct appeal. *See Sweet v. Bennett,* 353 F.3d 135, 139–40 (2d Cir.2003) (finding that petitioner's failure to raise ineffective assistance of counsel claim on direct appeal barred federal habeas review); *Williams v. Goord,* 277 F.Supp.2d 309, 318–19 (S.D.N.Y.2003) (holding that New York state law barring collateral attack of conviction if a petitioner failed to raise claim

of ineffective assistance of counsel on direct appeal, represented an application of a firmly established and regularly followed state law). It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under N.Y.Crim. Proc. Law § 440.10. *See* N.Y.Crim. Proc. Law § 440.10(1); *Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001).

The application of the state procedural rule in this case satisfies the factors identified in *Lee* and *Cotto.* The first factor, whether perfect compliance would have resulted in a different decision by the trial court, is not relevant here because Petitioner's claim relates to an issue raised on appeal. Looking to the second factor, New York courts have demanded compliance with the procedural rule in similar circumstances. *See People v. Mobley,* 59 A.D.3d 741, 742, 873 N.Y.S.2d 736, 737 (2d Dep't 2009) ("[A] motion to vacate a judgment must be denied when, although sufficient facts appear on the record to have permitted adequate appellate review, the defendant unjustifiably fails to raise the issue on his or her direct appeal."); *People v. Mendoza,* 298 A.D.2d 532, 533, 748 N.Y.S.2d 666, 666 (2d Dep't 2002) (finding that sufficient facts must be raised on the record for an appellate court to review a motion to vacate judgment pursuant to § 440.10).

 Looking to the third factor, Petitioner did not "substantially comply" with the state procedural requirement because he never brought his ineffective assistance of counsel claim on direct appeal. Moreover, there are legitimate governmental

---

8. The 440 court also rejected the claim on its merits. Nevertheless, where a state court finds a claim procedurally barred but finds it meritless in the alternative, its decision still serves as a procedural bar to the claim. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109

S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision) (emphasis in original).

interests served by demanding perfect compliance with the requirement that all claims apparent from the record be brought on direct appeal. *See People v. Saunders,* 301 A.D.2d 869, 869, 753 N.Y.S.2d 620, 622 (3d Dep't 2003) ("[T]he purpose of a CPL article 440 motion 'is to inform a court of facts not reflected in the record and unknown at the time of judgment .... By its very nature, the procedure cannot be used as a vehicle for an additional appeal.' ") (quoting *People v. Berezansky,* 229 A.D.2d 768, 771, 646 N.Y.S.2d 574, 577 (3d Dep't 1996)).

■ Petitioner has not argued or demonstrated cause for his procedural default. Nor is any cause apparent from the record. Petitioner's claim is thus procedurally barred.[9] *See Edwards v. Fischer,* 414 F.Supp.2d 342, 365 (S.D.N.Y.2006) (denying habeas petition where petitioner could not explain procedural default and where record offered no reason for counsel's failure to raise the claim at the appropriate time). Moreover, Petitioner cannot demonstrate prejudice, because the claim clearly has no merit. As the 440 court observed, Petitioner's attorney objected to the admission of the statement, and succeeded in precluding its admission. (*See* Dannelly Decl. Ex I at 3–4.) There can, therefore, be no claim of ineffective assistance.

### B. "[H]e's cool, everything is alright."

If Petitioner intended to assert that his attorney was ineffective for failing to object to the statement "he's cool, everything is alright," that claim was never raised in the state courts and is therefore unexhausted. An application for a writ of habeas corpus may not be heard unless all available state court remedies have been exhausted. *See* 28 U.S.C. § 2254(b); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994). When state law affords a petitioner the right to raise a constitutional claim "by any available procedure," and the claim is not raised, it cannot be deemed exhausted. *Ellman,* 42 F.3d at 147; *see also* 28 U.S.C. § 2254(c).

"[I]t is not sufficient merely that the [petitioner] has been through the state courts." *Picard,* 404 U.S. at 275–76, 92 S.Ct. at 512. Rather, the claims must be "fairly presented" to the state courts so that the state has an opportunity to correct any alleged constitutional violations. *Id.* at 275, 92 S.Ct. at 512; *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *McGann v. New York,* 870 F.2d 908, 910 (2d Cir.1989); *Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191–92 (2d Cir.1982) (en banc); *Alvarez v. Scully,* No. 91 Civ. 6651(PKL), 1993 WL 15455, at *3 (S.D.N.Y. January 11, 1993); *see also Bossett,* 41 F.3d at 828 ("[t]o fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.' " (quoting *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990) (per curiam))).

If the petitioner no longer has "remedies available" in the state courts because he is procedurally barred by state law from raising such claims, the court may deem the claims exhausted but procedurally defaulted. *See Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991) (quoting *Pesina,* 913

---

9. When a petitioner does not establish cause, it is unnecessary to examine the issue of prejudice. *See Jacquin v. Stenzil,* 886 F.2d 506, 509 (2d Cir.1989) ("Because [petitioner] is unable to show cause, it is unnecessary for us to reach the issue of prejudice ...."); *Bentley v. Scully,* 851 F.Supp. 586, 604 (S.D.N.Y. 1994) (If a "petitioner has failed to establish 'cause,' ... it is unnecessary to make an inquiry into the question of 'prejudice.' ").

F.2d at 54). Further, for the purposes of exhaustion, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989); *see also Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982); *Bossett,* 41 F.3d at 828; *Holmes v. Bartlett,* 810 F.Supp. 550, 554 (S.D.N.Y.1993).

Since Petitioner's ineffective assistance claim is record-based, he was required to raise it on direct appeal. A defendant is only entitled to one direct appeal, *see* N.Y. Court Rules § 500.10(a); *Aparicio,* 269 F.3d at 91; *Bossett,* 41 F.3d at 829; *Grey,* 933 F.2d at 120; *Holmes,* 810 F.Supp. at 554–55, which Petitioner has already pursued. Because New York courts would refuse to address the unexhausted claim, it would be fruitless to require Petitioner to return to state court to exhaust it. *See Bossett,* 41 F.3d at 829; *Grey,* 933 F.2d at 120; *Holmes,* 810 F.Supp. at 555. The claim is therefore deemed exhausted, but procedurally defaulted. *See Grey* 933 F.2d at 120–21; *Pesina,* 913 F.2d at 54.

Once again, the claim could be heard if Petitioner could demonstrate cause for the default and prejudice. He has not asserted or demonstrated cause. Moreover, as discussed in Section II, *supra,* the claim has no merit. Petitioner thus cannot demonstrate prejudice. Petitioner also has not offered any new evidence suggesting that he is actually innocent of the crimes of which he was convicted. Given the overwhelming evidence of Petitioner's guilt presented at trial, the jury's verdict is well supported and a miscarriage of justice would not occur if the Court does not review Petitioner's claim.

Accordingly, Petitioner's claim of ineffective assistance of trial counsel should be dismissed.

## IV. Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for failing to argue that the weight of the drugs testified to by the People's expert was insufficient to sustain a conviction for Criminal Sale of a Controlled Substance in the First Degree. This claim was raised in Petitioner's writ seeking *coram nobis* relief, and the Appellate Division summarily denied the application. (*See* Dannelly Decl. Ex. O.) The claim is therefore exhausted and can be addressed on its merits.

### A. *Legal Standard*

■■■■ For the purpose of AEDPA, ineffective assistance of counsel claims are "squarely governed by [the Supreme Court's] holding in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Williams,* 529 U.S. at 390, 120 S.Ct. at 1511; *accord Eze v. Senkowski,* 321 F.3d 110, 124 (2d Cir. 2003). Ineffective assistance of appellate counsel claims are also governed by the *Strickland* standard. *See Mosby v. Senkowski,* 470 F.3d 515, 519 (2d Cir.2006). A petitioner must satisfy a two-part test in order to establish that his Sixth Amendment right to effective assistance of counsel has been violated. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064–65; *Henry,* 409 F.3d at 62–63; *LanFranco v. Murray,* 313 F.3d 112, 118 (2d Cir.2002). He must show (1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) that the deficient performance of counsel prejudiced the defense, that is, that there is a "reasonable probability that, but for counsel's unprofessional er-

rors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see also Henry,* 409 F.3d at 63 (quoting *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65).

In order to satisfy the *Strickland* test, a petitioner must meet the standards of both components. However, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069.

▌ In the appellate context, it is not enough for a petitioner to simply argue that counsel did not raise certain nonfrivolous arguments on appeal, as no duty to raise every such argument exists. *See Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821 (1985); *see also Jones v. Barnes,* 463 U.S. 745, 752–54, 103 S.Ct. 3308, 3313–14, 77 L.Ed.2d 987 (1983) (noting that where an attorney exercises reasonable professional judgment in selecting the most promising issues to raise on appeal, a reviewing court should not second-guess that judgment); *Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir.2001) ("[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986)) (internal quotation marks omitted). Thus, a petitioner must show that appellate counsel selected grounds for appeal unreasonably, such as by "omitt[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2000) (quoting *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.

1994)). "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful" before the state's highest court. *Hemstreet v. Greiner,* 367 F.3d 135, 142 (2d Cir.2004) (quoting *Mayo,* 13 F.3d at 534), *vacated on other grounds,* 378 F.3d 265 (2d Cir.2004).

▌ Finally, to succeed, a petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . ." *Bell v. Cone,* 535 U.S. 685, 698–99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002). Under AEDPA, it is insufficient to "convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, [a petitioner] must show that [the state courts] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699, 122 S.Ct. at 1852 (internal citation omitted).

### B. *Petitioner's Claim*

Petitioner has failed to satisfy both prongs of *Strickland* because he cannot show that his appellate counsel unreasonably failed to raise a meritorious claim, or that he suffered any prejudice attributable to the conduct of appellate counsel.

Petitioner was convicted of Criminal Sale of a Controlled Substance in the First Degree for the two and one-quarter ounces of crack cocaine he sold on September 7, 2001, and Criminal Sale of a Controlled Substance in the Second Degree for the one-half ounce and eight and one-half grains of crack cocaine he sold on October 3, 2001. A defendant must sell two or more ounces of crack cocaine to satisfy a first-degree sale charge. *See* NYPL § 220.43(1). UC 5673's testimony established that he bought a bag of cocaine from Petitioner on September 7, which was stip-

ulated by the parties as weighing over two ounces. (*See* Tr. at 191, 207–09, 229, 235–38.) Given UC 5673's testimony and the facts of the stipulation, there is no question that Petitioner sold the requisite amount of narcotics to satisfy the requirements for a first-degree narcotics sale conviction. Thus, appellate counsel was not ineffective for failing to raise this meritless claim. *See United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

## CONCLUSION

For the reasons set forth above, this Court recommends that the Petition be dismissed with prejudice. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Harold Baer, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Baer. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).